UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**HARADA FAMILY DENTAL CARE, P.C.,**<br><br>                        Debtor. | Case No. **4:24-bk-40076-BPH** |
| **HARADA FAMILY DENTAL CARE, P.C.**,<br><br>                        Plaintiff.<br><br>v.<br><br>**STRATEGIC FUNDING SOURCE, INC, D/B/A KAPITUS SERVICING INC. and KAPITUS SERVICING INC., AS SERVICING AGENT FOR KAPITUS LLC**,<br><br>                        Defendants.[1] | Adv. No. **4:25-ap-04001-BPH** |

**MEMORANDUM OF DECISION**[2]

**I.      Introduction**

In this adversary proceeding,[3] Kapitus filed a motion to compel arbitration on April 16, 2025, at ECF No. 10 ("Arbitration Motion"). This Court entered an order denying the Arbitration Motion on July 1, 2025, at ECF No. 23 ("Arbitration Order"). Kapitus filed a Notice of Appeal

---

[1] Plaintiff shall be referred to as "Harada" and Defendants as "Kapitus."

[2] Unless otherwise indicated, all Chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88.

[3] Unless otherwise denoted, all references to ECF No. refer to this adversary proceeding. Entries denoted with a "BK" refer to the underlying bankruptcy.

1

and a Motion for Leave to Appeal Interlocutory Order on July 15, 2025, at ECF Nos. 25 and 26, respectively. On the same day, Kapitus filed a Motion to Stay Pending Appeal at ECF No. 27 ("Stay Motion"). Harada filed an objection to the Stay Motion on July 29, 2025, at ECF No. 31. Kapitus filed a reply on August 12, 2025, at ECF No. 32. A hearing was held on the Stay Motion on August 29, 2025. Appearances were noted on the record.

## II. Jurisdiction and Venue

Allowance or disallowance of claims against the estate and estimation of claims are core proceedings of bankruptcy under 28 U.S.C. § 157(b)(2)(B). Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy court may hear, determine, and enter final orders and judgments in core proceedings. *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). Similarly, counterclaims by the estate against persons filing claims against the estate are core. 28 U.S.C. § 157(b)(2)(C). Lastly, the determination of the validity of liens, confirmation of plans, and the debtor-creditor relationship are also core matters implicated by the competing claims in this adversary proceeding. 28 U.S.C. § 157(b)(2)(H), (L), and (O).

A stay pending appeal is governed by Fed. R. Bankr. P. 8007. Generally, to receive a stay pending appeal, the moving party must first request the stay from the bankruptcy court. Fed. R. Bankr. P. 8007(a)(1).[4] During an appeal, the court may "suspend or order the continuation of other proceedings in the case, or issue any appropriate order to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e). An appeal does not divest the bankruptcy court of jurisdiction to enter or deny a stay. *Ho v. Dai Hwa Elec. (In re Ho)*, 265 B.R. 603, 604–05 (BAP 9th Cir. 2001). Under the Federal Arbitration Act (FAA),[5] an order denying a stay of proceedings is subject to appeal. 9 U.S.C. § 16(a)(1)(A).

Venue is proper in the district where the underlying case is pending. 28 U.S.C. §§1391(b), 1409(a). The underlying case is pending before this Court.[6]

## III. Procedural History & Order Subject to Appeal

Kapitus was included on Harada's schedules and received notice of the underlying bankruptcy case. Consistent with the notice of case filing, Kapitus filed a proof of claim ("Claim").[7] According to the Claim, Kapitus was owed $110,898.85 on the petition date.

---

[4] Throughout this Memorandum, any reference to a stay shall refer to a stay under Fed. R. Bankr. P. 8007(a)(1) unless denoted as a "Section 362 Stay."

[5] 9 U.S.C. § 1 *et seq*.

[6] *In re Harada Family Dental Care, P.C.*, Case No. 4:24-bk-40076-BPH.

[7] Proof of Claim 9.

2

Attached to the Claim was a copy of the parties' prepetition contract, on which the Claim is based. Harada objected to the Claim on February 5, 2025 ("Claim Objection").[8]

The Claim Objection disputed: (i) the value of Harada's alleged security; (ii) the validity of Kapitus's security interest; and (iii) argued that the Claim is subject to offset because the underlying transaction was usurious and subject to a penalty for usury. Kapitus's response to the Claim Objection was due March 7, 2025.

Prior to March 7, 2025, Harada filed this adversary proceeding.[9] In this adversary action, Harada requests: declaratory relief regarding choice of law; declaratory relief and a finding that the transaction is a loan; declaratory relief and a finding that the loan is usurious under Mont. Code. Ann. §§ 31-1-107 and 108 (2025); and disallowance of claim under 11 U.S.C. § 502(b)(1).[10] In the prayer for relief, Harada seeks the statutory penalty for usury, which is forfeiture of a sum double the amount of interest to be paid under the loan.[11] Harada calculates that amount to be $231,662.[12]

Kapitus failed to respond to the Claim Objection. Under Mont. LBR 9013-1(h), failure to respond to or defend against a claim objection is deemed an admission that relief should be granted. As a result, this Court sustained the Claim Objection.[13] Debtor filed its First Amended Chapter 11 Plan on March 18, 2025.[14] The amended plan provides that Class 3 unsecured claimants will receive a pro rata share of Harada's projected disposable income plus any surplus of the funds (after payment of Class 4 unsecured claims) resulting from Harada's usury claim against Kapitus.[15] Finally, under the plan's definitions, the Claim was a disputed claim.

On March 27, 2025, Kapitus appeared and requested reconsideration of the order sustaining the Claim Objection.[16] It alleged the Claim Objection was sent to the payment address

---

[8] BK ECF No. 31.

[9] BK ECF No. 38; ECF No. 1.

[10] ECF No. 1.

[11] ECF No. 1.

[12] ECF No. 1.

[13] BK ECF No. 53.

[14] BK ECF No. 57.

[15] BK ECF No. 57.

[16] BK ECF No. 65.

3

rather than the notice address included on its Claim.[17] Rather than litigate reconsideration, the Parties stipulated as follows:

- Debtor hereby withdraws its Objection to Proof of Claim and Debtor and Kapitus agree that the Court's Order sustaining the Objection should be vacated. *All issues raised in the Objection and Kapitus' Rule 3008 Motion will be consolidated with Adversary Proceeding.*[18]

- *Kapitus hereby withdraws its Objection to Confirmation of Second Amended Chapter 11 Subchapter V Plan of Reorganization* without prejudice to raising any and all objections it may have to a modified plan if and when the Adversary Proceeding is settled or resolved.[19]

- *Confirmation and administration of the Second Amended Plan is without prejudice to Kapitus or its claim while the parties litigate the status of Kapitus' claim.*[20]

- Kapitus has until April 16, 2025, to amend its *Answer to Complaint* filed in the Adversary Proceeding. *Kapitus reserves all rights thereto, including the right to invoke the Agreement to Arbitrate referenced in and attached to Kapitus' Claim. Debtor reserves the right to object to arbitration.*[21]

The stipulation was approved, and the Plan was confirmed.[22] Approval of the stipulation had the effect of vacating the order disallowing the Claim and consolidating all the related Claim Objection issues in this adversary proceeding.

---

[17] These allegations were partly true and partly false. When the Claim was filed, Kapitus included two completed versions of Official Form 410. In one version it indicated two different addresses for notice and payments. In the later version at Claim 9-1 Part 2, it included the same address for notice and payments, 120 West 45th St., 4th Floor, New York, New York, 10036.

[18] BK ECF No. 82, ¶ 1 (emphasis added).

[19] BK ECF No. 82, ¶ 2 (emphasis added).

[20] BK ECF No. 82, ¶ 3 (emphasis added).

[21] BK ECF No. 82, ¶ 5 (emphasis added).

[22] BK ECF Nos. 90 and 96, respectively. Herein, "Plan" refers exclusively to BK ECF No. 86.

4

A pretrial scheduling conference was held in this adversary proceeding on May 14, 2025.[23] Shortly before the conference, the Arbitration Motion was filed.[24] At the pretrial conference, the Arbitration Motion was discussed and Kapitus expressed the need for a speedy resolution.[25] The Court concurred and indicated its willingness to set the trial on an expedited basis.[26] Kapitus refused, explaining that their client's interest in arbitration was not limited to efficiency and speediness of trial.[27]

This Court held a hearing on the Arbitration Motion on June 27, 2025.[28] This Court concluded, "[b]ecause these matters are core proceedings and arbitration would circumvent the objectives of the bankruptcy code, this Court declines to enforce the arbitration agreement." In reaching its decision, the Court relied on its prior decision in *Samson v. LCF Grp. (In re Bridger Steel, Inc.)*, 2024 WL 4377452 (Bankr. D. Mont. Sept. 30, 2024). In *Samson*, this Court compiled applicable law from this circuit, including *Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1020 (9th Cir. 2012) and other cases.[29] Under *Thorpe*, courts are required to consider whether issues are core or noncore, and whether compelling arbitration "would conflict with the underlying purposes of the Bankruptcy Code[ ]" before it can render a final decision on enforceability of arbitration. 671 F.3d at 1020–21 (citing *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987)).

In *Samson*, this Court concluded: "[u]nder the circumstances here, enforcing arbitration of issues that are core in a separate forum, divorced from the 'whole system' on a piecemeal basis, would conflict with the collective claims allowance process set forth in the Code." *Samson*, 2024 WL 4377452, at *9. Despite Kapitus's arguments, this Court's rationale in *Samson* dictated the same outcome here, and the Arbitration Motion was denied.

Additionally, in its analysis in this case, this Court emphasized that more recent Supreme Court jurisprudence calls into question the viability of those cases that proclaim, "Section 2 is a congressional declaration of a liberal federal policy *favoring* arbitration agreements,

---

[23] ECF No. 15.

[24] ECF No. 10.

[25] ECF No. 15, 00:01:50–00:03:00.

[26] ECF No. 15, 00:01:50–00:07:00.

[27] ECF No. 15, 00:01:50–00:07:00.

[28] ECF No. 22.

[29] *See Ackerman v. Eber (In re Eber)*, 687 F.3d 1123 (9th Cir. 2012); *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 821 F.3d 1146 (9th Cir. 2016).

notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (emphasis added).[30]

Kapitus filed its Notice of Appeal, Motion for Leave to Appeal Interlocutory Order, and the Stay Motion on July 15, 2025.[31] This Court heard oral arguments on the Stay Motion on August 29, 2025.[32]

## IV. Applicable Law and Analysis

"A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant . . . . It is an exercise of judicial discretion." *Va. R. Co. v. United States*, 272 U.S. 658, 672 (1926) (citing *In re Haberman Mfg. Co.*, 147 U.S. 525 (1893)); *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). The party requesting the stay bears the burden of demonstrating sufficient circumstances to justify use of the court's discretion. *Chrysler*, 556 U.S. at 961 (quoting *Nken*, 556 U.S. at 433–34).

### A. Dispute over Standard for Stay Pending Appeal

The parties dispute the applicable standard when a bankruptcy court considers whether to grant a stay pending appeal of a decision denying a motion to compel arbitration. Kapitus argues that the U.S. Supreme Court's holding in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), is controlling. Harada argues for the traditional four-part test outlined in *Nken,* 556 U.S. at 426 (2009). Following the filing of an interlocutory appeal of a decision denying a motion to compel arbitration, a losing party may seek a stay pending appeal pursuant to 9 U.S.C. § 16(a). The majority in *Coinbase* concluded that the district court must stay its proceedings. *Id.* at 740. *Coinbase* did not involve bankruptcy, and that distinction alone calls into question its applicability to this case. Further, Kapitus's urging of an overly broad reading of *Coinbase* is difficult to reconcile with the Code.[33]

In *Coinbase*, the Court considered "whether a district court must stay its proceedings while an interlocutory appeal involving arbitrability is ongoing." 599 U.S. at 740. It affirmatively concluded "yes," reasoning that a court is divested "'of its control over those aspects of the case involved in the appeal.'" *Coinbase*, 599 U.S. at 740 (quoting *Griggs v. Provident Consumer*

---

[30] Almost 40 years after *Moses Cone*, the Supreme Court explained: "'[the FAA's goal] is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance, Inc.,* 596 U.S. 411, 418 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967)).

[31] ECF Nos. 25–27.

[32] ECF No. 38.

[33] Kapitus essentially reads *Coinbase* to require that a stay of proceedings be imposed in any proceeding where arbitration is appealed without any inquiry or analysis.

*Disc. Co.*, 459 U.S. 56, 58 (1982)). The majority's rationale emphasizes conservation of judicial resources. *Id.* at 742–743.

Importantly, the majority in *Coinbase* noted statutory exceptions where Congress has authorized an interlocutory appeal but provided that a stay of proceedings in the district court is not automatic. *Coinbase*, 599 U.S. at 744 n.6. Importantly, those exceptions include 28 U.S.C. § 158(d)(2)(D) which states:

> An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.[34]

Although this subsection involves direct appeals from the bankruptcy court to the courts of appeal, it signals *Coinbase*'s recognition that its holding should not be read as expansively as Kapitus contends.

At least one court has construed n.6 in Coinbase to mean that a stay pending appeal does not automatically apply in bankruptcy proceedings. *In re Orchid Child Prods., LLC*, 2024 WL 1740741, at *20 (Bankr. C.D. Cal. Apr. 22, 2024). Another court has not read the footnote so broadly but has recognized exceptions in bankruptcy where the appeal could prejudice other parties to the bankruptcy or where the appeal is frivolous. *Lordstown Motors Corp. v. Hon Hai Precision Indus. Co. (In re Nu Ride Inc.)*, 666 B.R. 510, 517–21 (Bankr. D. Del. 2024). This Court joins *Orchid Child* and *Nu Ride* and concludes *Coinbase* does not stand for the proposition that a stay pending appeal of arbitrability is either automatic or mandatory in bankruptcy.

*Orchid Child* and *Nu Ride* recognize that bankruptcy is distinguishable from other types of litigation. Unlike other litigation, bankruptcy is comprised of contested matters and adversary proceedings, any of which may involve the debtor and a single creditor, or a broader subset of the collective creditors and parties in interest. A broad reading of *Coinbase* is untenable if it results in a bankruptcy court losing control over the entire case following an appeal of arbitrability by any single creditor. Kapitus would likely concede as much. Instead, like *Nu-Ride*, this Court must consider the issues to be arbitrated and the broader impact a stay pending appeal would have on this case.

Kapitus has argued that this adversary proceeding is most like *Nu Ride*, and this Court's analysis should reach the same result. Having considered Kapitus's argument and *Nu Ride*, this Court has identified important distinctions that make Kapitus's reliance on *Nu Ride* understandable but not persuasive. First, in *Nu Ride*, the court reasoned that a postconfirmation adversary proceeding between non-debtor parties would not significantly affect the rights of

---

[34] The paragraph referred to is specifically regarding the courts of appeals. 28 U.S.C. § 158(d)(1).

others in the bankruptcy. 666 B.R. at 516–19. In this case, the issues subject to arbitration are core, were pending at confirmation, and will likely have a significant impact on other creditors.

In *Nu Ride*, arbitration did not involve a debtor party, a core matter, or substantive issues affecting other creditors. Here, Harada is the debtor and Kapitus is the creditor seeking arbitration. The issues directly relate to claim allowance and may require a modification of Debtor's Plan. If Harada prevails, its unsecured creditors will be the beneficiaries and will receive an increased distribution under the Plan.[35] If Harada loses, treatment of the Small Business Administration's claim under the Plan will likely have to be modified.[36] The resolution of the issues involved in the Arbitration Motion will directly affect the equitable distributions creditors receive in this case. In light of these distinctions and *Nu Ride's* acknowledgement that "bankruptcy cases are different[,]"[37] this Court will apply the traditional test, rather than blindly apply *Coinbase*, as urged by Kapitus.

### B. Traditional Test

An appellant has the burden of demonstrating the stay is justified. *Nken*, 556 U.S. at 426–27. The decision to stay proceedings pending appeal is distilled into four factors:

(1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) Whether the applicant will be irreparably injured absent a stay;
(3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) Where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The factors are not *de minimis* thresholds requiring a "mere possibility," but should be shown with some confidence. *Id.* at 434–35. The first two factors "are the most critical." *Id.* at 434. However, the Ninth Circuit Court of Appeals has adopted a "sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." *Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

#### 1. Likelihood of Success on the Merits

While there are numerous interchangeable standards for likelihood of success, the applicant must demonstrate that "at a minimum . . . there is a substantial case for relief on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). This does not require that the applicant is likely to "win on the merits." *Id.*; *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011).

---

[35] BK ECF No. 83, 3–4.

[36] BK ECF No. 86, 2.

[37] 666 B.R. at 518.

Where a showing of irreparable harm is weak, the applicant must make an inversely strong showing of likelihood of success. *Lado*, 952 F.3d at 1010. Even when the showing of irreparable injury is strong, the applicant still "must show serious legal questions going to the merits." *Manrique v. Kolc*, 64 F.4th 1106, 1108 (9th Cir. 2023) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir. 1983)). The claim cannot be merely plausible. *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 863 (9th Cir. 2022).

This Court's determination that the issues are core and its exercise of discretion to deny the Arbitration Motion are not likely to be reversed on appeal because its analysis was anchored in controlling law. When a matter concerns a core proceeding in bankruptcy, "the bankruptcy court, at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement." *Thorpe*, 671 F.3d at 1021.[38] This Court reached the same conclusion here as in *Samson* because claim allowance is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and compelling arbitration would conflict with the Code.

### a. Claim allowance involves core matters

By filing a proof of claim,[39] Kapitus consented to the entry of final orders or judgments by this Court. *See Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990). Proceedings to determine claim allowance—including the counterclaims necessary to make those determinations—are undeniably core in bankruptcy. 28 U.S.C. §§ 157(b)(2)(B), (C). Courts have "authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process." *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1046 (9th Cir. 2014) (citing *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011)). The usury claim is a "counterclaim[ ] by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). It is a component of the Claim Objection.

Kapitus filed its Claim alleging it was owed $110,898.85.[40] Harada objected to the Claim alleging that the claim was based on a usurious loan.[41] If successful, Harada would be entitled to forfeiture of a sum equal to double the interest charged.[42] It calculates the penalty to be

---

[38] While this Court finds that arbitration does conflict with the purposes of Subchapter V and exercised its discretion to deny the Arbitration Motion under *Thorpe*, it questions whether this standard should be revisited given the U.S. Supreme Court's holding in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Many decisions enforcing arbitration seemingly favor arbitration rather than merely treating an arbitration agreement like other contracts.

[39] Claim 9.

[40] Claim 9.

[41] BK ECF No. 31.

[42] Mont. Code Ann. § 31-1-108(1) (2025).

9

$231,662.[43] If Harada prevails and is awarded the penalty, that award would offset the Claim, and the remainder would be distributed amongst Class 3 and 4 creditors. Conversely, if Kapitus prevails, no penalty will be awarded, and Harada will likely have to modify its Plan. The mere fact that a component of the claim objection is rooted in state law does not transform the issue from core to non-core. While this Court can understand Kapitus's interest in characterizing the issues as non-core, this is simply incorrect.

The order approving the stipulation expressly states, "*[a]ll issues of Debtor's claim objection* and Creditor's Rule 3008 motion (ECF No. 65) will be consolidated in the adversary proceeding."[44] When Kapitus and Debtor stipulated to vacating the order disallowing the Claim and consolidated the Claim Objection into this adversary, the parties expressly recognized the issues were inextricably intertwined. The Claim is subject to offset by any amount awarded under usury. Conversely, Kapitus will argue Montana law does not apply, the transaction was not a loan, and it is not usurious. There is simply no credible way for Kapitus to recharacterize this proceeding as anything other than the claim allowance process dictated by the Code—an undeniably core proceeding.

### b. Kapitus's efforts to arbitrate claim allowance have frustrated the Code's purposes

Having concluded the issues subject to arbitration are core issues, *Thorpe* permits denial of arbitration when compelling arbitration would conflict with underlying purposes of Code. "At the core of the Bankruptcy Code are the twin goals of ensuring an equitable distribution of the debtor's assets to his creditors and giving the debtor a 'fresh start.'" *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 563 (1994). Equitable distribution of the debtor's assets cannot be realized through individualized arbitration. Ordinarily, the purposes of bankruptcy are effectuated through a collective process to counter the "piranha" principle. As the Ninth Circuit Court of Appeals has explained:

> Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors. In a world of individual actions, each creditor knows that if he waits too long, the debtor's assets will have been exhausted by the demands of the quicker creditors and he will recover nothing. The creditors race to the courthouse, all demanding immediate payment of their entire debt. Like piranhas, they make short work of the debtor, who might have survived to pay off more of his debts with a little bit of reorganization—or at least might have more equitably fed the slower piranhas.

---

[43] ECF No. 1.

[44] BK ECF No. 90 (emphasis added).

> Federal bankruptcy law seeks to avoid this scenario by "creat[ing] a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."

*Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1203 (9th Cir. 2005) (citations omitted) (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)). Conducting the claim allowance process under the veil of innumerable disparate arbitrations does not promote the Code's collective, equitable proceeding involving the entire creditor body.

In the collective proceeding, transparency is a paramount feature. *In re NTI-NV, Inc.*, 2023 WL 4030563, at *5 (BAP 9th Cir. June 15, 2023). Creditors, debtors, trustees, and the Court have the opportunity to scrutinize prepetition conduct, challenge claims, and litigate issues that may impact their various pecuniary interests. Here, the Class 3 and 4 unsecured creditors are the ultimate beneficiaries if Harada prevails because their distributions under the Plan will increase. Conversely, the Small Business Administration risks having its distributions under the Plan modified and reduced. Absent a transparent process, these creditors' treatment is subject to change for reasons that may be enigmatic.[45]

If creditors are permitted to arbitrate their claims on an individualized basis, other features of bankruptcy are undermined, as illustrated in this case. "'[A] chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,' and that provision for summary disposition 'without regard to usual modes of trial attended by some necessary delay,' is one of the means chosen by Congress to effectuate that purpose." *Katchen v Landy,* 382 U.S. 323, 328–29 (1966) (citations omitted) (quoting *Ex parte Christy*, 44 U.S. 292, 293 (1845), and *Bailey v. Glover*, 88 U.S. 342, 346 (1874)). In this case, Kapitus's resort to arbitration has frustrated this purpose, delaying consideration of the merits and summary disposition.

As *Katchen* notes, bankruptcy provides for speedy and summary disposition of issues by design. The Code provides for contested matters and adversary proceedings. If Kapitus had responded to the Claim Objection (contested matter) or agreed to a trial date (adversary proceeding) in August or September—as suggested by this Court in May—the issues would be fully resolved. Instead, Class 3 and 4 recoveries remain uncertain, and Debtor's fresh start has been compromised by the ongoing costs of litigating arbitrability.[46]

While tempting to discount *Katchen*'s relevance given the passage of time, prompt adjudication of issues under short timelines in bankruptcy remains important to Congress. This

---

[45] *See* Ramona L. Lampley, *"Underdog" Arbitration: A Plan for Transparency*, 90 Wash. L. Rev. 1727, 1756–57 (2015).

[46] This Court's concerns were recently borne out in *Kirkland v. Rund (In re EPD Invest. Co., LLC)*, 114 F.4th 1148 (9th Cir. 2024). In that case, the Court of Appeals noted that trial had been delayed by several years while the parties argued over the motion to compel arbitration. *Id.* at 1155 n.3. The issues in that case would otherwise have been efficiently resolved using the processes dictated by the Code and applied by the bankruptcy court.

case was filed under Subchapter V of Chapter 11, which was intended to be the quicker, cheaper cousin of the traditional Chapter 11. *Legal Servs. Bureau v. Orange Cnty. Bail Bonds, Inc. (In re Orange Cnty. Bail Bonds, Inc.)*, 638 B.R. 137, 146 (BAP 9th Cir. 2022). It includes specific statutory provisions that reflect this goal. *See* § 1188(a) ("the court shall hold a status conference to further the expeditious and economical resolution of a case under this subchapter"); § 1189(b) ("The debtor shall file a plan not later than 90 days after the order for relief under this chapter"). These timelines are meaningless when core issues like claim allowance are the subject of demands to arbitrate and delay ensues, like in this case.

### c. Deference to arbitration post-*Morgan*

In *Morgan*, the Supreme Court held, "arbitration agreements [are] as enforceable as other contracts, but not more so." 596 U.S. at 418 (quoting *Prima Paint*, 388 U.S. at 404 n.12). Indeed, *Morgan* explained that "the text of the FAA makes clear that courts are not to create arbitration-specific procedural rules . . . . Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." *Id.* at 419. Additionally, *Morgan* reasoned, "a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." 596 U.S. at 418. This directive bears special emphasis in the bankruptcy context because ordinarily prepetition agreements, like agreements to arbitrate, are subject to being stayed, modified, rejected, not enforced, or otherwise altered.

At a minimum, any party seeking postpetition enforcement of a prepetition right must obtain Section 362 Stay relief, subject to limited exceptions. *See* § 362(a), (d). More importantly, in reorganization cases like this one, the Code provides the debtor with certain administrative powers that may fundamentally alter the parties' prepetition contracts. Prepetition agreements may be rejected. § 365. A secured creditor's collateral may be sold free and clear of its interest over its objection. § 363(f). A secured creditor's claim may be bifurcated into two claims. § 506(a)(1). As noted in the Arbitration Order, prepetition forum selection clauses are regularly disregarded and not enforced in bankruptcy.[47] Other examples include *ipso facto* clauses;[48] lease termination clauses;[49] and change-in-ownership provisions.[50]

---

[47] *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1051 (9th Cir. 2014).

[48] *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1111–15 (9th Cir. 2009).

[49] *Coleman Oil Co., Inc. v. Circle K Corp.* (*In re Circle K Corp.*), 190 B.R. 370, 376–77 (BAP 9th Cir. 1995), *aff'd*, 127 F.3d 904 (9th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998).

[50] *Crow Winthrop Operating P'ship v. Jamboree LLC (In re Crow Winthrop Operating P'ship)*, 241 F.3d 1121, 1123–24 (9th Cir. 2001).

Bankruptcy is a radical process of revisiting the relationships between parties.[51] While prepetition contracts form the basis of those relationships, the Code reshapes those relationships postpetition. In light of *Morgan*'s instruction and the fundamental processes of reorganization, this Court is not persuaded that the FAA provides a special shield to arbitration provisions that enable them to pass through bankruptcy unscathed where other clauses ordinarily perish.

For all of these reasons, Kapitus is not likely to prevail on appeal.

### 2. Irreparable Injury

Kapitus concedes, "[r]egardless of who addresses Plaintiff's claims against Defendant, Defendant will effectively and timely have its claims reasonably addressed."[52] An applicant must demonstrate more than the potential for injury; they must demonstrate "that there is a probability of irreparable injury if the stay is not granted." *Lair*, 597 F.3d at 1214 (citing *Leiva-Perez*, 640 F.3d at 968). While litigation expenses are typically not considered irreparable harm, some courts have found that arbitration is an exception. *See Garcia v. Pelican Inv. Holdings Grp., LLC*, 2023 U.S. Dist. LEXIS 38351, at *13 (C.D. Cal. Jan. 4, 2023).

Kapitus will not be irreparably injured. Kapitus argues: "Defendant will be denied not only the rights and benefits of its bargain with Plaintiff to have their dispute resolved in arbitration, but its rights guaranteed by 9 U.S.C. § 16(a) and *Coinbase*."[53] This greatly overstates the significance of the FAA, which according to *Morgan*, only requires arbitration be treated like any other agreement, neither favored nor disfavored.

Here, this Court is not convinced there is any likelihood of irreparable injury. At the hearing to set trial deadlines, the parties proposed deadlines that were significantly longer than this Court had planned.[54] Among the recognized goals of arbitration is "to achieve 'streamlined proceedings and expeditious results'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Preston v. Ferrer*, 552 U.S. 346, 357 (2008)). This Court offered Kapitus an accelerated trial timeline on multiple occasions, and in each instance it chose arbitration, and the

---

[51] Bankruptcy courts "sort out all of the debtor's legal relationships with others, and [ ]apply the principles and rules of the bankruptcy laws to those relationships." *Madrid v. Lawyers Title Ins. Corp. (In re Madrid)*, 725 F.2d 1197, 1203 (9th Cir. 1984) (citing H.R. REP. No. 595, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 5971 (footnotes omitted)). In this exercise of sorting out relationships and applying bankruptcy principles, the Code does not contemplate a piecemeal outsourcing of claims allowance or any other proceedings because it would be antithetical to the statutory framework Congress otherwise set forth that champions the collective over the individual.

[52] ECF No. 32, 6.

[53] ECF No. 32, 6.

[54] ECF No. 34.

corresponding delay associated with litigating the Arbitration Motion. Kapitus's interest in arbitration is divorced from streamlined proceedings and expeditious results.

Trial is set to occur on February 19, 2026—147 days from entry of this order. Discovery is set to conclude by December 12, 2025. Even if the Arbitration Order were overturned, it is unlikely that arbitration will be completed prior to the deadlines set by this Court. Further, no purpose would be served by staying proceedings pending the outcome of this issue—the discovery process must occur in some form or another irrespective of whether this Court or an arbitrator decides the issue.

### 3. Substantial Injury

To determine substantial injury, this Court must "consider 'the particulars of each individual case'" *Lair*, 697 F.3d at 1215 (quoting *Leiva-Perez*, 640 F.3d at 970). Kapitus contends, "Harada's mere preference to resolve the parties' state law contract issues in the adversary proceeding is not grounds to deny Defendant's stay request and does not demonstrate injury of any type or kind." Once again, Kapitus's characterization of the issues as "state law" is flawed, if not misleading. It ignores or fails to recognize that the "state law" issues are integral components of the Claim Objection that it consolidated in the adversary proceeding. The state law issues cannot be meaningfully divorced from the Claim Objection. Suggesting otherwise elevates form over substance. As explained above, these are core matters, despite their reliance on state law.

This Court agrees that Harada will likely suffer little injury from a stay pending appeal, subject to an exception. Kapitus has indicated it will continue to enforce its rights against Christopher Harada, a guarantor.[55] To the extent Harada has a duty to indemnify Christopher, he will be injured from the further delay and uncertainty that accompanies Kapitus's arbitration efforts and a stay pending appeal. Absent a stay pending appeal, the trial deadlines set by this Court will remain binding and will ensure that the Code's goals of prompt and summary disposition will more likely be realized. Conversely, Kapitus has little to gain from a stay except their "mere preference" to proceed with arbitration. Lastly, as described below, it is not merely Harada's harms that concern this Court, but the other parties to this bankruptcy and the public in general.

### 4. Public Interest

The historic federal "'policy favoring arbitration' . . . . 'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" *Morgan*, 596 U.S. at 418 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010)).

---

[55] ECF No. 9, 15.

This policy is just one among many and cannot take precedence over an entire constitutionally prescribed area of law—bankruptcy.[56]

Bankruptcy's importance was initially recognized in the Constitution. Its consequence has endured and grown since that day. It serves essential public purposes, but crucially, to achieve those purposes it must be completed quickly. "There is a great public interest in the efficient administration of the bankruptcy system." *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 832 (Bankr. C.D. Cal. 2017) (quoting *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 148 (Bankr. D. Nev. 2008)). Included is a formidable interest in the "swift and just resolution of claims against bankruptcy debtors." *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006) (citing *Wolinsky v. Maynard (In re Maynard)*, 269 B.R. 535, 542 (D. Vt. 2001) ("In addition to the important public interest in upholding the integrity of the bankruptcy system and preventing tainted compromise, there is a public interest in encouraging just, speedy, inexpensive, and final resolution of disputes").

In the underlying bankruptcy, there are ten other creditors awaiting the outcome of this adversary proceeding. These parties consented to the confirmation of a plan with the understanding that claims would be resolved expeditiously in this adversary proceeding.[57] It does not serve their interest to prolong their uncertainty pending appeal, while they receive 2.24 cents on the dollar.[58] Ultimately, it is the other unsecured creditors that benefit from the Claim Objection, not the Debtor.

Arbitration is becoming an increasing prevalent issue for courts. Ryan Miller, *Next-Gen Arbitration: An Empirical Study of How Arbitration Agreements in Consumer Form Contracts Have Changed after* Concepcion *and* American Express, 32 Geo. J. Legal Ethics 793, 824 (2019) (noting that companies regularly using arbitration provisions in their form contracts increased from 22.3% to 66.7%). Despite the U.S. Supreme Court's clear directive in *Morgan*, jurisprudence across the country continues to spawn arbitration-advantaging rules, adding yet more incentive to include them in every contract. *See* Erin Islo, *Not Like Other Contracts: The Supremacy and Exceptionalism of Arbitration*, 59 Idaho L. Rev. 1 (2023).

Courts have acknowledged that unlike individualized litigation, bankruptcy's goals of equitable distribution to all creditors can only be realized in a singular forum. *Sherwood*, 394 F.3d at 1203–04 ("Federal bankruptcy law seeks to avoid [a mutually destructive feeding frenzy] by 'creat[ing] a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike'") (quoting *MSR*

---

[56] U.S. Const. art. I, § 9, cl. 4 "[The Congress shall have power] [t]o establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States."

[57] BK ECF No. 86.

[58] BK ECF No. 86, 2.

*Exploration*, 74 F.3d at 914, *cert. denied*, 546 U.S. 927 (2005)). The public's interest is best served by maintaining the singular forum—a "whole" system under federal control. The whole system is transparent, collective, efficient, and reflects Congress's recognition that its goals could not otherwise be realized in individualized proceedings. Accordingly, this Court finds the public interest weighs against staying the proceedings pending appeal.

## V. Conclusion

In weighing these factors, this Court finds that factors 1, 2, and 4 all weigh against granting a stay pending appeal. Accordingly, the Stay Motion will be denied. An Order will be entered separately.

Dated September 25, 2025.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana